J-A02014-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| SEAN HAUGHTON | |
| Appellee | No. 1315 EDA 2013 |

Appeal from the Order April 4, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013330-2012

BEFORE:  PANELLA, J., LAZARUS, J., and WECHT, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 17, 2015**

The Commonwealth appeals from the order entered on April 4, 2013, in the Court of Common Pleas of Philadelphia County, granting Sean Haughton's motion to suppress all evidence found in his home.  We affirm.

The trial court summarized the facts of this case as follows:

On October 11, 2012, at approximately 10:00 pm, Officers Michvech and Helgpyh were driving on the 200 block of West Albanus Street.  The officers saw the defendant, Sean Haughton, as well as two other males, and Officer Michvech observed a large bulge in [Haughton's] jacket pocket.  When the officers stopped [and] exited their vehicle to investigate, [Haughton] ran from the sidewalk up the steps and into the house, slamming the door behind him.  Both officers pursued [Haughton] into the house, where he was found crouching behind a coffee table. [Haughton] was arrested, and a gun was subsequently recovered from under the coffee table.

Suppression Court Opinion, 4/14/14, at 1.

Haughton filed a motion to suppress all evidence found in his home following the search on October 11, 2012, arguing that the search was illegal because the officers did not possess reasonable suspicion or probable cause to stop or investigate the defendant. The suppression court agreed and, following a hearing, granted Haughton's motion on April 4, 2013.

On May 1, 2013, the Commonwealth filed the instant appeal. The Commonwealth presents one issue for this Court to review:

> Did the lower court err in suppressing evidence on the basis that there was no reasonable suspicion to stop [Haughton] where police with experience in numerous gun arrests were patrolling a high-crime area with recent shootings and observed him with a bulge in his jacket pocket that they suspected was a gun; he looked towards them and fled into [his][1] house [. . .]; and upon pursuing they found him near a gun in plain view on the floor?

Appellant's Brief, at 4. We consider the Commonwealth's issue mindful of the following:

> When the Commonwealth appeals from a suppression order, this Court follows a clearly defined scope and standard of review. We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. This Court must first determine whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn from those findings. In appeals where there is no meaningful dispute of fact, as in the case *sub judice*, our duty is to

---

[1] Initially, the Commonwealth argued that the court erroneously concluded that Haughton owned the house located at 228 West Albanus Street. In its reply brief, however, the Commonwealth withdrew this argument and conceded that Haughton had a reasonable expectation of privacy in the house. *See* Appellant's Reply Brief, at 6.

determine whether the suppression court properly applied the law to the facts of the case.

*Commonwealth v. Gorbea-Lespier*, 66 A.3d 382, 385-86 (Pa. Super. 2013) (quoting *Commonwealth v. Arthur*, 62 A.3d 424, 427 (Pa. Super. 2013)) (internal quotation marks and citations omitted).

Upon our review, we determine that the certified record supports the factual findings of the suppression court. *Gorbea-Lespier*, *supra*. Thus, we are presented solely with the legal question of whether the facts recited by the suppression court, quoted above, gave rise to reasonable suspicion or probable cause.

The Commonwealth argues that an examination of the totality of the circumstances warrants the conclusion that the officers had reasonable suspicion to stop Haughton and investigate their belief that he was armed. Commonwealth's Brief at 10. We disagree.

> While warrantless seizures [. . .] are generally prohibited, they are permissible if they fall within one of a few well-delineated exceptions. One such exception allows police officers to detain individuals for a brief investigation when they possess reasonable suspicion that criminal activity is afoot. Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to "specific and articulable facts" leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

*Commonwealth v. Brown*, 996 A.2d 473, 476-77 (Pa. 2010) (citations omitted).

Here, the large bulge Officer Michvech observed in Haughton's jacket pocket while she slowly drove by him in her police cruiser is insufficient to warrant a belief that criminal activity was afoot. *Commonwealth v. Martinez*, 588 A.2d 513, 516 (Pa. Super. 1991) ("An officer's mere belief that a person might be armed cannot serve as an additional articulable fact to justify an initial stop."). Furthermore, Officer Michvech's description of the "bulge" failed to include any indication that it was a weapon. The Commonwealth emphasizes the fact the officers observed Haughton in a high crime area with recent shootings. However, mere presence in a high crime area or near a recently reported crime does not justify a stop. *Id.* at 515-16. Beyond presence in a high crime area, the officers lacked other specific and articulable facts leading them to suspect criminal activity was afoot. The officers were not responding to flash information or a reported crime, and the officers did not observe any criminal activity. Based on the foregoing, we agree with the suppression court's conclusion of law that the officers lacked reasonable suspicion to stop Haughton.

After Officers Michvech and Helgpyh stopped and exited their vehicle, Haughton ran into his house. The Commonwealth argues that given Officer Michvech's suspicion that Haughton was armed – a suspicion that strengthened when Haughton, unprovoked, fled into a nearby house – she

was justified in immediately following Haughton into the house. We disagree.

> It is well established that "probable cause alone will not support a warrantless search or arrest in a residence . . . unless some exception to the warrant requirement is also present . . . . [A]bsent consent or exigent circumstances, private homes may not be constitutionally entered to conduct a search or to effectuate an arrest without a warrant, even where probable cause exists." [. . .] [O]ur Supreme Court explained that "[i]n determining whether exigent circumstances exist, a number of factors are to be considered," such as,

>> (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, i.e., whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.

> Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or danger to police or other persons inside or outside the dwelling. Nevertheless, police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.

*Commonwealth v. Bowmaster*, 101 A.3d 789, 793 (Pa. Super. 2014) (citations omitted). We further note that flight in and of itself cannot constitute probable cause to arrest. *Commonwealth v. Pegram*, 301 A.2d 695, 697 (Pa. 1973).

Here, the Commonwealth failed to establish that probable cause existed to conduct a warrantless search of Haughton's home for the following reasons: the officers did not have a reasonable suspicion to believe Haughton was armed or that criminal activity was afoot; Haughton's flight did not constitute probable cause; and there were no factors coupled with his flight that might have constituted probable cause for arrest. ***Pegram***, ***supra***.

Furthermore, the Commonwealth failed to establish that exigent circumstances existed to enter Haughton's home. ***Bowmaster***, ***supra***. Although Officer Michvech believed that Haughton was armed, probable cause to arrest did not exist. In addition, the officers did not observe any criminal activity nor was there any reason to think that Haughton was a danger to the officers or other persons inside or outside the dwelling.

Because the Commonwealth failed to establish a legal justification for the officers to enter his home without a warrant, any evidence discovered during this illegal search was fruit of the poisonous tree. Accordingly, the suppression court properly excluded it.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2015